466 P.2d 763

**STATE of Arizona, Appellee,**

v.

**Ramon Trivimio GARCIA, Appellant.**

**No. 2000.**

Supreme Court of Arizona,
In Division.
March 25, 1970.

Gary K. Nelson, Phoenix, Atty. Gen., Carl Waag, Phoenix, Asst. Atty. Gen., for appellee.

Arthur W. Vance, Yuma, for appellant.

LOCKWOOD, Chief Justice.

Defendant, Ramon T. Garcia, was convicted of assault with intent to commit murder (A.R.S. § 13–248) and sentenced to not less than seven nor more than nine years in the Arizona State Prison. He appeals.

The incidents giving rise to this case took place at a migrant worker camp near Parker, Arizona. During the night of October 8, 1968, the labor boss of Doyle's labor camp, Harold Stephens, otherwise known as "Red," was sleeping in a bunkhouse at the camp. Late at night the defendant who was employed at the camp woke "Red" saying, "Wake up, I think I have killed a guy. I need your help." "Red" put on his shoes and went outside where some of the workers slept. He saw one of the workers, Joe Montez, lying on a bunk in a "big puddle of blood." "Red" then summoned the local police.

Officer Sitton of the Parker Police Department arrived at the labor camp about 12:30. He described substantially the same scene as "Red" did. Officer Sitton called an ambulance for the victim and then investigated the scene. After questioning "Red" and some of the workers, he arrested the defendant. He then took the defendant to the Parker jail, where an officer read to the defendant the Miranda Warnings. The defendant stated that he understood his rights, and replied "I hope the son-of-a-bitch dies. I meant to kill him."

The victim was taken to a medical clinic in Parker for treatment of his wounds. The doctor at the clinic treated the cuts on the victim's head and face. However, the doctor released the victim from further hospitalization and he was taken to spend the rest of the night at the Parker jail. The following day a police officer took several color snapshots of him. These together with a black and white snapshot, of the victim at the clinic were admitted into evidence. Other snapshots showed the bunk on which the victim had been lying, on which there appeared to be a large area of reddish colored stain on the mattress.

At the trial the state presented only four witnesses—"Red", the labor camp boss, Officer Sitton of the Parker Police Force, Deputy Hargis of the Yuma County Sheriff's Office, and Orman Stanley, a Tribal Police Officer of the Colorado River Indian Tribe. The State was unable to serve a subpoena on Joe Montez, because he could not be found, hence he did not appear at the trial. Neither did the doctor who treated the victim on the night of the assault appear at the trial.

The defendant presented no defense at the trial. He moved for a directed verdict

at the close of the state's case and when this was denied, objected to instructions on any crime greater than simple assault. These objections were overruled.

Evidence had been admitted that the victim when questioned by one of the officers on the night of his injury, as to what happened, had replied that he was "lying there" and woke up and someone was hitting him. He did not make any statement as to who was doing the hitting or in what manner it was done. The state also attempted to introduce into evidence a lettuce hoe, presumably on the theory that this was the weapon used by the defendant, but was unable to lay the proper foundation to introduce it.

Defendant's appeal is based on several propositions: (1) that there should have been a directed verdict; (2) that testimony of incriminating statements were admitted prior to the showing of the corpus delecti; (3) that the corpus delecti of the crime of assault with intent to commit murder was not proven; (4) that statements of the victim when interrogated by police officers at least two hours after the alleged assault were erroneously admitted; (5) that the admission of inculpatory statements by the defendant at his interrogation were improperly admitted, and (6) that the state did not prove the use of an instrument or weapon which made it practicable for the defendant to take the life of the victim.

■ We are of the opinion that there is no merit in the matters raised on appeal. The appearance of the victim with cut face and head, lying in "a pool of blood"

was sufficient evidence that an assault had been committed. There was testimony that a police car had issued a call to the officers in question to investigate a man "chopped up over at Doyle's Camp." An officer testified that the defendant ran out of the bunkhouse and hid in a ravine where the officers apprehended him.

■ Before admitting the evidence regarding admissions made by the defendant to the police officers, the court held a hearing in the absence of the jury. The officers testified that the defendant had been given the "Miranda" warnings, and asked if he understood them. They testified that he replied emphatically that he understood them better than the officers did.

■ It is not necessary to prove what instrument was used to inflict wounds which are the basis of an assault with intent to commit murder. Finch v. State, 98 Ga. App. 480, 106 S.E.2d 86 (1958).

■ Intent is determined by the circumstances of the case. Defendant's statement to the witness Stephens, together with his attempted flight, are sufficient circumstances connecting the defendant with the crime, and to infer intent.

■ Statements of the victim, even if erroneously admitted, could not have been prejudicial, as his comment did not involve the defendant, and it was evident he had been "hit".

Affirmed.

McFARLAND and HAYS, JJ., concur.